UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 1.10387626 BITCOIN,<br><br>Defendant. | No.  2:22-cv-2153-TLN-KJN<br><br>FINDINGS & RECOMMENDATIONS<br><br>(ECF No. 14.) |

The United States of America brings this in rem action seeking civil forfeiture, under 21 U.S.C. § 981(a)(6), of defendant "Approximately 1.10387626 Bitcoin" ("defendant cryptocurrency") as property derived from proceeds traceable to an offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).  The action concerns a fraud scheme that took place on or around May 19, 2022, targeting a single known victim "("Victim 1") living in Rocklin, California.  The defendant cryptocurrency was seized by the U.S. Secret Service on or about September 6, 2022.  Pending before the court is the Government's motion for entry of default judgment (ECF No. 14), which was submitted without a hearing pursuant to Local Rule 540(d).[1]  No opposition has been received.  Upon review of the motion, supporting documents, and good cause appearing, the undersigned recommends the motion be GRANTED.

---

[1] This case was referred to the undersigned pursuant to Local Rule 302(c)(19).

1

**Factual Background**

According to information the U.S. Secret Service received on May 20, 2022, Victim 1 was the subject of a fraud orchestrated via two telephone calls from purported law enforcement officials. First, on May 19, 2022, Victim 1 received an automated call about fraudulent activity on his Amazon account. Victim 1 did not remember the phone number. The automated caller asked Victim 1 to verify the purchase of an iPhone 13 and MacBook Pro using their Amazon account. Victim 1 selected the prompt that confirmed he did not make those purchases, and the phone service transferred him to what he believed was Amazon's Fraud Department. Once transferred, Victim 1 logged into his Amazon account, and it displayed that there were no charges; the Amazon "fraud department operator" replied that someone had used Victim 1's information to create an "Amazon Business Account," so Victim 1 needed to log into the business account. Victim 1 replied he did not have an Amazon Business Account and therefore it appeared to be a case of fraud. Victim 1 stated that he would like to file a fraud report. The operator asked Victim 1 to confirm his address and social security number and that someone would contact him shortly. (ECF No. 1 at ¶ 6.)

The second phone call was to Victim 1 from an individual claiming to be Special Agent Eric Miles of the Secret Service. "Agent Miles" offered his badge number—159263—and said the Secret Service and IRS opened a case because they had identified five businesses and several bank accounts that were opened in Victim 1's name. "Agent Miles" explained that such activity may be indicative of money laundering. "Agent Miles" told Victim 1 that he needed to freeze the funds in his Bank of America account so his social security number and assets could be differentiated between his legitimate activities and those of the fraudsters. "Agent Miles" then sent Victim 1 several documents via text message. Victim 1 quizzed "Agent Miles" about the need to text important documents. "Agent Miles" responded that texting was the only way to guarantee end-to-end encryption. "Agent Miles" further stated that Victim 1's email was likely compromised, thus "Agent Miles" insisted that Victim 1 stay on the telephone and leave work immediately to secure their cryptocurrency in a digital wallet. The phone call between Victim 1 and "Agent Miles" often disconnected; when the call would drop, "Agent Miles" immediately

called back and said he needed to record everything for "evidence." Victim 1 was told to withdraw cash from his account and deposit it in a secured digital wallet. Victim 1 complied with this request, withdrew $40,000 in cash from his savings account at Bank of America, then transferred all but $100 into a digital wallet using the QR code provided by the fraudsters. From the digital wallet, Victim 1 conducted three transactions involving the transfer of a total of 1.104 Bitcoin to the fraudsters. (Id. at ¶ 7.)

Law enforcement has traced the Bitcoin and determined that Victim 1's Bitcoin was transferred to Patel Ankitbhai Ramanbhai at Binance Cryptocurrency exchange as follows. On May 19 and 20 of 2022, Victim 1 completed three BTC transactions to address bc1q73whuwpkjvdhzhc0mhpe0mfxdxk98s2xzpu0uc ("bc1q73"), totaling approximately 1.104 BTC. This amount of Bitcoin was then transferred from address bc1q73 to address bc1ql748afne50t5xkqvfsr7vgrsv68xvjzc88dnrl ("bc1q17"). Then, the same amount of Bitcoin from bc1q17 was sent to bc1q77yvec0dx95fm4gu5chx59uul9pk6depgnyan9 ("bc1q77"). On the same day (May 20, 2022), the same amount of Bitcoin in bc1q77 was sent to 1F7J3xv16YyFAhuoKwDiVjz3WDbHGYzxY8 ("1F7J3x") held at Binance. (Id. at ¶ 8.)

The Secret Service agent confirmed the account containing the stolen BTC is Ramanbhai's account. Specifically, Binance confirmed that 1F7J3x is associated to Patel Ankitbhai Ramanbhai based on the "Know Your Customer (KYC)" information provided by Ramanbhai. This KYC information included a "selfie" and an Indian Permanent Account Number Card with a matching photo. Ramanbhai provided Binance an email address (xxxxxxxxx1315@gmail.com) from which customer service requests have been placed. An individual who identified himself as Ramanbhai also emailed the Secret Service multiple times from the same email address, requesting they help him retrieve his Binance account and stating he was willing to cooperate with law enforcement regarding any transaction in question. The Secret Service agent did not respond to these emails. (Id. at ¶ 9.)

The stolen BTC was held in an account at Binance, headquartered at Level 3, Melita Court, Triq Giuseppe Cali, Ta'Xbiex XBX 1420, Malta. The Secret Service agent identified that users who hold accounts on the Binance platform login to it through the main website

https://www.binance[.]com or via web-based application. User ID 285159432/Account Number Card ID: BHXPP1660A, held in the name of Patel Ankitbhai Ramanbhai, was first frozen by Binance at the request of the Secret Service. On August 16, 2022, a federal seizure warrant was executed on Binance for the virtual currencies currently held in User ID 285159432/Account Number Card ID: BHXPP1660A, controlled by and in the name of Patel Ankitbhai Ramanbhai, at the virtual currency exchange Binance. Approximately 1.10387626 Bitcoin (the defendant cryptocurrency) was seized from Binance pursuant to the Federal seizure warrant. (Id. at ¶ 10.)

**Procedural Posture**

The Government filed the instant complaint in December of 2022. (ECF No. 1.) On December 29, 2022, the undersigned authorized public notice of the action to be given one time for 30 consecutive days on the official internet government forfeiture site www.forfeiture.gov. (ECF No. 3.) Publication in a manner consistent with the court's order began on January 5, 2023, running for at least 30 consecutive days, as per Rule G(4)(a)(iv)(C) of Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supp. Rules"). (ECF No. 5.) In addition to providing notice by publication, the Government also caused Joseph McLellan and Patel Ankitbhai Ramanbhai to be served with notice, as follows. (ECF Nos. 9-11.)

On January 13, 2023, the Government mailed copies of the complaint, application and order for publication, warrant for arrest, initial pretrial scheduling order, and court notices to Joseph McLellan at 5840 Pebble Creek Drive, Rocklin, CA 95765, by first class mail and certified mail number. The PS Form 3811 (certified mail "green card" showing delivery of mail) was signed on or about January 14, 2023. (ECF No. 14-1 (Teglia decl.) at ¶ 3 and Ex. A.) Further, on February 13, 2023, the U.S. Secret Service personally served the above-listed documents on Joseph McLellan at 5840 Pebble Creek Drive, Rocklin, CA 95765. (Id. at ¶ 4 and Ex. B.)

On February 9, 2023, the United States sent copies of the above-listed documents to Patel Ankitbhai Ramanbhai via email pursuant to the Order Permitting Direct Notice of Complaint for Forfeiture by Email filed February 9, 2023. The email was sent to Patel Ankitbhai Ramanbhai at the following email address: ankitpatel1315@gmail.com. (Id. at ¶ 5 and Ex. C.)

Despite these notices, neither Joseph McLellan nor Patel Ankitbhai Ramanbhai (nor any other person) responded, and the deadline for filing a claim has passed. Supp. R. G(5). In May of 2023, at the Government's request, the Clerk of the Court entered default as to Joseph McLellan and Patel Ankitbhai Ramanbhai, as per Fed. R. Civ. P. 55(a). (ECF Nos. 10-13.) The Government now seeks entry of a default judgment against these two individuals, as well as the entry of a Final Judgment of Forfeiture vesting all right, title, and interest in the defendant cryptocurrency to the United States. (ECF No. 14.)

**Legal Standard**

"The Due Process Clause of the Fifth Amendment guarantees that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.' [I]ndividuals must receive notice and an opportunity to be heard before the Government deprives them of property." United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993) (citations omitted). Due process is satisfied when the Government complies with the notice requirements set forth by statute and in the federal and local rules of procedure. See Dusenbery v. United States, 534 U.S. 161, 168 (2002).

**Analysis**

Local Rule 540(d) provides for an ex parte entry of default judgment, without further notice, at any time after the time for answer has expired, provided due notice of the action has been given and no one has appeared to claim the property and give security thereof. The Government has demonstrated compliance with these requirements.

**A.    Notice**

Supplemental Rule G(4) requires the Government to provide both general notice to the public and direct notice of the forfeiture action to any known person who reasonably appears to be a potential claimant. Fed. R. Civ. P. Supp. G(4)(a), (b).

**1.    Published Notice**

Supp. Rule G(4)(a)(ii) provides that "a published notice must:  (A) describe the property with reasonable particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with a claim and answer."

5

Here, the Government published the required notice of the Government's complaint on the official internet government forfeiture site (www.forfeiture.gov) for 30 consecutive days. (ECF No. 5.) The notice describes the amount of cryptocurrency and circumstances of its seizure, and states that claims and answers under Rule G(5) must be brought within 60 days from the first day the notice is published. (Id. at 3.) The notice also names Kevin Khasigian as the government attorney to be served with the claim and answer. (Id.) Thus, the government has satisfied the requirements of Supp. Rule G(4)(a)(ii).

### 2. Notice to Claimants

Supp. Rule G(4)(b) sets forth the requirements for notice to known potential claimants. It provides that "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." Fed. R. Civ. P. Supp. G(4)(b)(i). The notice must state "(A) the date when the notice is sent; (B) a deadline for filing a claim, at least 35 days after the notice is sent; (C) that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer." Fed. R. Civ. P. Supp. G(4)(b)(ii). Finally, Supp. Rule G(4)(b)(iii)(A) provides that "[t]he notice must be sent by means reasonably calculated to reach the potential claimant."

Here, the government complied with this rule by sending notice of the action and a copy of the complaint to the potential claimant Joseph McLellan, by personal service, first-class and certified mail. (See ECF No. 14-1 at ¶¶ 3-4 and Exs. A and B.) As to Ramanbhai, the U.S. served him notice via email and pursuant to the district court's February 9, 2023 order. (See ECF Nos. 6-7.) As to the sufficiency of the notices, they properly list a 35-day deadline for filing a claim and a 21-day deadline for submitting an answer or a motion under Rule 12, as well as contact information for the government attorney to be served with the claim and answer. (See id.)

The Government has adhered to the procedural rules governing civil forfeiture actions as required by federal statute, the Supplemental Rules for Certain Admiralty and Maritime Claims, and the Admiralty Local Rules. The court now turns to whether default judgment is warranted.

### B. Entry of Default Judgment is Proper

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk is required to enter default when the fact of default is established by affidavit or otherwise. Fed. R. Civ. P. 55(a). The Clerk's entry of default against Alex Lopes, Jose Lopes, and Bret Craig effects their admission of the factual allegations of the complaint, except those relating to the amount of damages. See Fed. R. Civ. P. 8(b)(6); Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977).

It remains within the sound discretion of the district court to grant a default judgment pursuant to Fed. R. Civ. P. 55(b). Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making a default judgment determination, the court considers the following factors:

1. the possibility of prejudice to the plaintiff,
2. the merits of plaintiff's substantive claim and the sufficiency of the complaint;
3. the sum of money at stake in the action;
4. the possibility of a dispute concerning material facts;
5. whether the default was due to excusable neglect, and
6. the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986) (noting defaults are ordinarily disfavored). Here, application of the Eitel factors supports entry of default judgment of forfeiture against Alex Lopes, Jose Lopes, and Bret Craig as potential claimants of the defendant currency, and against all other potential interests. This is consistent with the nature of forfeiture in rem proceedings. See Hanson v. Denckla, 357 U.S. 235, 246 n.12 (1958) (explaining that "[a] judgment in rem affects the interests of all persons in designated property").

#### 1. Possibility of Prejudice to the Plaintiff

The first Eitel factor considers whether plaintiff would suffer prejudice if default judgment were not entered, as prejudice to a plaintiff weighs in favor of a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, the Government would be prejudiced by the denial of its motion, spending additional time and effort litigating an action in which the claimants have abandoned any claims to the defendant cryptocurrency. Further, given that no party has attempted to oppose the complaint or otherwise make a claim against the defendant cryptocurrency, if the Government's motion is not granted, it will have no other opportunity to establish its right to the currency. This weighs in favor of default judgment.

   2. <u>Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint</u>

   The second and third factors (the merits of the substantive claims and the sufficiency of the complaint) are considered in tandem, due to the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. <u>See</u> <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175.

   Herein, the Government's claim appears to have merit and is sufficiently pleaded. Specifically, accepting as true the factual allegations of the verified complaint, the Government has demonstrated that defendant cryptocurrency derived from proceeds traceable to an offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), which incorporates the definition of "specified unlawful activity" found in 18 U.S.C. § 1961(1) and is therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C). (ECF No. 1 at 12 (noting that "Wire Fraud in violation of 18 U.S.C. § 1343, constitutes 'specified unlawful activity' as defined in § 1961(1)").

   Additionally, as set forth above, the Government has adhered to the procedural requirements of a forfeiture action, including the filing of a sufficiently verified complaint. This weighs in favor of default judgment.

   3. <u>Sum of Money at Stake</u>

   The defendant cryptocurrency that was seized and subject to forfeiture is not of such substantial value as to warrant denial of the Government's motion. <u>See, e.g.</u>, <u>United States v Approximately $28,000 in U.S. Currency</u>, 2022 WL 3910244, at *5 (E.D. Cal. Aug. 31, 2022) (noting $28,000 was not a substantial sum to dissuade default judgment finding).

   4. <u>The Possibility of a Dispute Concerning Material Facts</u>

   The potential claimants were properly served with notice of this action and instructions on how and when to enter a claim. No claim or answer has been filed, and so liability has been admitted. The court may assume the truth of well-pleaded facts in the complaint following the clerk's entry of default, and thus, the court now finds there is no likelihood that any genuine issue of material fact exists. <u>See, e.g.</u>, <u>Elektra Entm't Group Inc. v. Crawford</u>, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the

court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); PepsiCo, Inc., 238 F. Supp. 2d at 1177.  The Government provided additional declarations detailing how it came into possession of the defendant cryptocurrency.  On the record before this court, there is no evidence of a genuine dispute concerning the material facts.  The undersigned finds this factor favors the entry of a default judgment.  See, e.g., 28,000 in U.S. Currency, 2022 WL 3910244 at *5.

        5.   Whether the Default was Due to Excusable Neglect

Upon review of the record before the court, the undersigned finds the default was not the result of excusable neglect.  Pepsi Co, Inc., 238 F. Supp. 2d at 1177.  Here, there is no evidence that the abandonment by McLellan or Ramanbhai was due to excusable neglect, given the ample notice provided each.  See, e.g., id.

        6.   Policy of Deciding Cases on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, although the undersigned is cognizant of this policy—it is unavailable here because no claimants have not responded.  This factor does not weigh against entry of default judgment.  See, e.g., id.

## RECOMMENDATIONS

For the above reasons, IT IS HEREBY RECOMMENDED that:

1. The Government's motion for default judgment (ECF No. 14) be GRANTED;
2. Judgment by default be entered against any right, title, or interest of potential claimants Patel Ankitbhai Ramanbhai and Joseph McLellan in the defendant cryptocurrency referenced in the above caption;
3. Final judgment be entered, forfeiting all right, title, and interest in the defendant cryptocurrency to the United States, to be disposed of according to law.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after

being served with these findings and recommendations, the parties may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 7, 2024

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

bitc.2153